UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FEN X. CHEN, QIU CHEN, YU ZHENG, CHAI CHEN, DANG ZHENG, HUA CHEN, YONG CHEN, KUN HUANG, and QI LIU,

        Plaintiffs,

    - against -

STREET BEAT SPORTSWEAR, INC., ALBERT PAPOUCHADO, MICHEL AMAR, JIAN WEN LIANG a.k.a. RAYMOND LIANG, FEN CHEN a.k.a. HUA FEN CHEN, LUN WEI FAN, 1A FASHIONS INC., and RED ARROW INC.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

01 Civ. 0792 (ILG) (RML)

**DECLARATION OF KENNETH KIMERLING**

## DECLARATION OF KENNETH KIMERLING

KENNETH KIMERLING, hereby declares:

1.    I am an attorney for plaintiffs[1] and submit this declaration in support of Plaintiffs' Cross Motion for Summary Judgment Against defendants Street Beat Sportswear, Inc., Michel Amar, and Albert Papouchado. This declaration attaches to it the various declarations and documents submitted in support of plaintiffs' motion. In addition, this declaration is submitted to explain the calculation of damages sought by plaintiffs' in their motion for summary judgment.

---

[1] Fen X. Chen, Qiu Chen, Yu Zheng, Chai Chen, Dang Zheng, Hua Chen, Yong Chen, Kun Huang and Qi Liu and opt-in plaintiffs, Zhong Zhou Lin and Yi Qin Chen. See, 29 U.S.C. §216(b).

1

**Declarations:**

2. Plaintiffs rely on the declarations of their two experts Louis B. Vanegas and Professor Richard Greenwald. Attached as "Vanegas Decl." and "Greenwald Decl." These declarations primarily discuss why Street Beat and other manufacturers use contractors to produce their garments and conclude that they do it to avoid compliance with the labor laws or similarly, to avoid liability for noncompliance with the labor laws.

3. Plaintiffs rely on their own declarations which are separately attached as the Declarations of Fen X. Chen, Qiu Chen, Yu Zheng, Chai Chen, Dang Zheng, Hua Chen, Yong Chen, Kun Huang, Qi Liu, Zhong Zhou Lin and Yi Qin Chen. These declarations like others are attached as "[NAME] Decl." The plaintiff declarations principally report on their hours and wages which are used in the calculation of their damages. The plaintiff declarations also state that they worked almost exclusively on Street Beat garments during these periods. Lastly the declarations discuss the role that Street Beat and other defendants played in their work.

4. Plaintiffs have also relied on the declaration of one former Street Beat employee, Ai Ling Mui. her declaration is attached as "Mui Decl."

**Deposition Transcripts & Exhibits**

5. Plaintiffs have cited to the depositions of the various defendants as well as some witnesses, including employees of defendants and experts retained by defendants. The pages of these depositions are attached. These depositions are listed by name, for example, Papouchado Dep. Plaintiffs' deposition exhibits were for the most part consecutively numbered. The deposition exhibits that are referenced in either the deposition testimony or these moving papers are attached as Exhibits 13 through 20 and are described below.

**Numbered Exhibits:**

6. Exhibit 1: This exhibit summarizes voluminous documents provided by defendants. See Federal Rules of Evidence, Rule 1006. This chart records the checks and their amounts issued by Street Beat to 1A Fashion from January 2000 to the middle of March 2001. It also records the invoices that were paid by the checks. Exhibits 1 reflects that almost all the checks were for amounts of less than $10,000 and that there were usually several checks issued on a single day in a week period. Further, the chart reflects that even though several invoices are bunched together and paid in one check, they are still almost always under $10,000. These checks reflect a conscious pattern to assist these factories in violating the tax laws.

7. Exhibit 2: This is also an exhibit that plaintiffs created to summarize voluminous documents. See Federal Rules of Evidence, Rule 1006. Exhibit 2 reflects the accounts payable by Street Beat to 1A Fashion and Red Arrow. There were several copies that could not be read. In the period between the end of August 1999 and the end of January 2001, Street Beat paid 1 A Fashion over $2,404,441 for the garments that were made in the factory. Similarly, in the period between the end of June 1999 and the beginning of December 1999, Street Beat paid Red Arrow over $537,703 for the garments that were made in the factory.

8. Exhibit 3: This exhibit attaches three investigation report from the United States Department of Labor ("DOL"). In each report the DOL determines that Street Beat garments have been made in factories that have violated the labor laws. A 1998 report finds violations in Fortune Knitware Inc. 138 Baxter Street, New York, New York. A 1999 report finds violations in Covello, Inc., one of the factories where plaintiffs worked. A 2000 report finds violations in Dragon Knitwear, 120 Baxter Street, New York.

9. Exhibit 4: This exhibit attaches a 1995 DOL investigation report of Street Beat. The report determines that Street Beat has not paid overtime to some of its cutting room employees.

10. Exhibit 5: Attached is a decision by the National Labor Relations Board in <u>CCY New Worktech, et al.</u> dated September 21, 1999. The NLRB affirms a determination that several of the factories that produced Street Beat garments, and in which some of the plaintiffs worked, were all affiliated enterprises, often successors for each other. The factories were Hua Great Procetech, CCY New Worktech, XMG Fashions, and Kam Fai Fashions.

11. Exhibit 6 : This exhibit is a transcript from the Criminal Court of the City of New York, dated October 28, 1999, setting forth the criminal convictions of defendant Jian Wen Liang.

12. Exhibit 7: This exhibit is the criminal information against defendant Jian Wen Liang that leads to the various convictions set forth in Exhibit 6.

13. Exhibit 8: This exhibit is the February 1997 Memorandum of Agreement between Street Beat and the DOL. The agreement resolves back wage claims under the Fair Labor Standards Act in regard to Excel Fashion and Monami Fashions, where Street Beat garments were being produced. Street Beat also agreed to enter into the Augmented Compliance Program Agreement ("ACPA") with DOL. This exhibit was Exhibit A to the Amended Complaint.

14. Exhibit 9: This exhibit is a copy of the Augmented Compliance Program Agreement described above. This exhibit was Exhibit B to the Amended Complaint.

15. Exhibit 10: Attached are two December 1998 monitoring reports prepared pursuant to the ACPA by and independent monitor, Apparel Resourses, Inc. The reports cover Covello and XMG Fashions, two of the factories where plaintiffs worked, and disclose violations of the labor laws. As noted above, in the discussion of Exhibit 3, Covello was later found by the DOL to

have violated the labor laws.

16. Exhibit 11: This exhibit is a document from the New York State Department of Labor, Apparel Industry Task Force. The document provides a guide to "How to Identify Sweatshops." Among the indicia is "tax irregularities."

17. Exhibit 12: This exhibit is a compilation of over 130 invoices 1A Fashion submitted to Street Beat in a fifteen-and-a-half month period between January 2000 and the middle of March 2001. On each of these invoices the price to paid by Street Beat for garments already produced and delivered by the 1A Fashion has been reduced by Street Beat.

**Deposition Exhibits:**

18. Exhibit 13: Plaintiffs' Deposition Exhibit 6: Worker's Questionnaire dated 5/10/2000

19. Exhibit 14: Plaintiffs' Deposition Exhibit 8: Street Beat Check Stub 035419 dated August 25, 1980 and Invoices from 1 A Fashion.

20. Exhibit 15: Plaintiffs' Deposition Exhibit 10: Street Beat Check Stub 035418 dated August 25, 1980 and Invoices from 1 A Fashion.

21. Exhibit 16: Plaintiffs' Deposition Exhibit 11: Street Beat Check Stub 035376 August 18, 1980 and Invoices from 1 A Fashion.

22. Exhibit 17: Plaintiffs' Deposition Exhibit 13: Worker Questionnaire dated 5/10/2000.

23. Exhibit 18: Plaintiffs' Deposition Exhibit 14: Pre-Contract Screening, Hua Great Procetech.

24. Exhibit 19: Plaintiffs' Deposition Exhibit 18: Letter from Louis Vanegas, U.S. DOL, to Alan Smith at Street Beat Sportswear, re: Covello, dated May 27, 1999.

25. Exhibit 20: Plaintiffs' Deposition Exhibit 19: Letter from Allen Smith, Street Beat

Sportswear, to Louis Vanegas, U.S. DOL, dated June 21, 1999.

26. Exhibit 21: Plaintiffs' Deposition Exhibit 22: Street Beat Check Stub; 034245 dated March 30, 2000, and invoices from 1A Fashion.

**Plaintiffs Damages:**

27. Plaintiffs counsel have calculated the damages owed to the plaintiffs for the minimum wage and overtime violations. These calculations and the plaintiff damage charts are discussed below.

28. Plaintiffs seek damages for several labor law violations: overtime pay, minimum wages and spread-of-hours pay. None of the plaintiffs was paid for all of their overtime hours. The factories operated seven days a week. They were open on a regular basis from early in the morning to late into the evening. Some of the plaintiffs did not earn the minimum wage for some periods of their employment. None of the plaintiffs was paid spread-of-hours pay, an element of New York State's minimum wage orders which requires an extra hour's pay for each day that an employee is on the job over 10 hours, including break time. 12 NYCRR §142-2.4.

29. Most of the plaintiffs' were piece workers, although several were paid by the week and/or by the hour.

30. Plaintiffs were unable to obtain only a few time and pay records from any of the Defendants. While there were time clocks in most of the factories, the time records that were kept were false. As a result, to a large extent Plaintiffs have relied on their own records if they have them or their recollections of their general work hours in their declarations submitted with the motion for summary judgment. Where specific information is lacking, average hours and wages were used. In some instances, the averages were based on the more specific records.

31. Similarly, in the absence of accurate wage records, Plaintiffs rely on their own records and/or estimates of their weekly wages. Again, in some instances, averages were used based on less than complete plaintiffs' records. Damage charts were created for each of the plaintiffs. These Charts are found in Damage Exhibits. Plaintiffs have submitted comprehensive declarations that set forth their recollections of their weekly work hours as well their weekly wages. These declarations have been described above are attached by plaintiffs names. When there are plaintiff records that are relied upon, a page of these records are attached to the plaintiff's declaration. The full copies of the plaintiffs' records have been provided to Defendants in discovery and can be provided to the Court if requested. Plaintiffs request that the Court treat the information taken from plaintiffs' handwritten records which are set forth in the damage charts as summaries and calculations under Rule 1006 of the Federal Rules of Evidence.

32. Plaintiffs' damage charts are based on the information provided in plaintiffs' declarations and their deposition testimony. They differ to some extent from earlier ones provided in response to discovery requests to conform to the plaintiffs' more specific information provided in response to defendants' questions at their depositions or in their own declarations.

33. The total damages sought for all plaintiffs is set forth in a cumulative chart, the first chart in the Damages Exhibit.. The penny or two differences in the individual charts and the cumulative charts are the result of rounding differences.

34. The statute of limitations period is based on the dates the complaint and the amended complaints were was filed or the dates of plaintiff's opt-in notices. These dates are set forth at the top of the individual damage charts. These dates were used in calculating damages as described below.

## MINIMUM WAGE

35. To determine whether plaintiffs were paid the minimum wage, the charts calculate the minimum wages based what was the appropriate hourly rates at the time of the work. The minimum wage requirements were different under the federal Fair Labor Standards Act and under the New York State Labor Law during the periods covered by this lawsuit. Because the nonpayment of minimum wage and overtime were intentional and willful acts, a three year statute of limitations applies under FLSA. 29 U.S.C. § 255(a). For the three years prior to the date the statute of limitation dates in Exhibit D, the FLSA rates were used. As of September 1, 1997, the FLSA rate of $5.15 applied. 29 U.S.C. § 206(a). Prior to that, a rate of $4.75 applied. Id.

36. Under the New York State Labor Law, the minimum wage was $4.25 an hour. N.Y. Lab. § 652. New York's minimum wage increased to $5.15 on March 31, 2000. The New York State minimum wage rates were used for the period starting 3 years before the statute of limitations date on the damage charts and extend back to 6 years before. The New York State Labor Law has a six year statute of limitations. N.Y. Lab § 663.

37. Plaintiff's actual weekly earnings were compared to the appropriate minimum wage weekly earnings. If a plaintiff's earnings were below the minimum wage, the amount owed was inserted in the column called Minimum Wage (MW) Owed.

38. For those plaintiffs who were paid by the hour at a rate above the minimum wage, this analysis was not done.

## OVERTIME

39. Plaintiffs almost always worked overtime - more than 40 hours a week. 29 U.S.C. § 207;

N.Y.C.R.R. § 142-2.2. However, they were not paid for their overtime. The damage charts calculate what they should have earned in overtime pay using their average hourly rate earned in a week (the "regular rate") or the minimum wage, which ever is larger. The amounts overtime pay owed was placed in the Overtime (OT) Owed column.

## SPREAD OF HOURS PAY

40. Plaintiffs are entitled to an extra hour's pay, at the minimum wage under New York Labor Law, for every day they are on the job more than 10 hours. N.Y.C.R.R. § 142- 2.4.

41. The New York State minimum wage rate of $4.25 was used in these spread-of-hours' calculations for all days prior to March 31, 2000, after which the rate of $5.15 was used. NY Lab. § 652.

## LIQUIDATED DAMAGES

42. Plaintiffs are entitled to liquidated damages for the willful and intentional acts of defendants. There is no excuse for not paying the minimum wages and overtime wages to manual laborers like plaintiffs. The Defendants must have acted willfully and intentionally.

43. At the bottom of plaintiffs' damage charts, the federal and New York State liquidated damages are calculated. The federal FLSA's liquidated damages, 100%, are calculated for the first three years of the overtime and minimum wage violations, i.e., for the first three years before the filing date or opt-in date. The New York State liquidated damages, 25%, are calculated for the overtime and minimum wage violations that occurred in the period of time between six years and three years before the filing date or opt-in date. The spread-of-hours' damages are subject to New York State's liquidated damages for the total period covered in the damage charts.

## PREJUDGMENT INTEREST

9

44.     Plaintiffs are also entitled to prejudgment interest at 9% uncompounded on their New York State wage claims pursuant to CPLR 5001 et. seq. The amounts of prejudgment interest will be calculated at the time of final judgment.

WHEREFORE the summary judgment should be issued against the Street Beat Defendants and damages sought should be awarded to plaintiffs.

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Dated: October 22, 2004

_____
Kenneth Kimerling